# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | CIVIL ACTION NO. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, AMBER GROVE, in | : | |
| her individual capacity and in her | : | |
| official capacity as the Pennsylvania | : | |
| State University's Title IX Coordinator, | : | |
| and SARAH KERN, in her individual | : | |
| capacity, | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
## FOR LEAVE TO PROCEED BY PSEUDONYM

Plaintiff John Doe, by and through his undersigned counsel, files this Brief in Support of his Motion for Leave to Proceed by Pseudonym. This case arises from a demonstrably false report of sexual misconduct against Mr. Doe by one Jane Roe, and from the failure of the named defendants—the Pennsylvania State University ("Penn State" or "the University"), Amber Grove, Penn State's former Title IX Coordinator, and Sarah Kern, a Title IX Investigator at Penn State (collectively "Defendants")—to investigate that false report fairly and reasonably. Indeed, as set forth in the Complaint, Defendants not only failed to protect Mr. Doe's statutory and constitutional rights, they also actively worked to violate them by concealing

exculpatory evidence from the Title IX Hearing Panel, undermining Mr. Doe's defense and resulting in a partial finding of responsibility against him.

Mr. Doe seeks to right the wrongs done to him and to clear his name and academic record by, *inter alia*, obtaining a judgment declaring Defendants' conduct unlawful and requiring Defendants to vacate the finding of responsibility against Mr. Doe on his academic record. Identifying Mr. Doe by name in the Complaint would publicly associate his name with Ms. Roe's false allegations and defeat the very purpose of the lawsuit he has filed. Mr. Doe therefore respectfully requests that the Court grant his Motion and allow Mr. Doe to proceed by pseudonym in this lawsuit to prevent him suffering widespread and permanent reputational harm.

## **PROCEDURAL HISTORY**

Plaintiff John Doe initiated this action with the filing of a three-count Complaint. Therein, Mr. Doe asserts claims against Defendants Amber Grove, Penn State's former Title IX Coordinator, and Sarah Kern, a Title IX Investigator at Penn State, for violating Mr. Doe's constitutional right to procedural due process, pursuant to 42 U.S.C. § 1983 (Count I); against Defendants Penn State and Ms. Grove for establishing customs, policies, and practices at Penn State that deprive respondents in Title IX investigations of their constitutional and statutory rights, pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), and its progeny (Count II); and against Defendant Penn State for sex discrimination in violation of Title IX of

the Education Amendments of 1972, 20 U.S.C. § 1681(a) (Count III).  Mr. Doe filed his Motion for Leave to Proceed by Pseudonym contemporaneously with the filing of his Complaint.

## FACTUAL BACKGROUND

The factual background of this case is set forth at length in Mr. Doe's Complaint, which is incorporated herein by reference.  By way of brief summary, in the fall of 2022, while a sophomore at Penn State, Mr. Doe had consensual sex with a woman and fellow Penn State student, Jane Roe, who had attended a party at his fraternity house.  (*See* Doc. 1 ¶¶ 92–130.)  The pair had consensual sex in Mr. Doe's bedroom on the night of the party, September 1, 2022, and again on the morning of September 2, 2022, after Ms. Roe stayed the night with Mr. Doe.  (*See id.*)  Ms. Roe continued to attend parties at the fraternity over the course of the next year, including one the following night, September 3, 2022.  (*See id.* ¶¶ 131–138.)

On November 7, 2022, after continuing to attend parties and socialize at the fraternity where Mr. Doe resided for more than two months, Ms. Roe filed an informal report of sexual misconduct with Penn State's Office of Sexual Misconduct Prevention and Response, which is a division of Penn State's Title IX Office.  (*Id.* ¶ 140.)  Ms. Roe alleged for the first time that all instances of sexual intercourse with Mr. Doe on September 1 and 2, 2022, were nonconsensual.  (*Id.* ¶ 141.)  Ms. Grove, Penn State's then-Title IX Coordinator, assigned Ms. Kern, a Title IX Investigator

3

at Penn State, to investigate Ms. Roe's complaint.  (*Id.* ¶ 143.)  Ms. Kern interviewed Ms. Roe on January 24, 2023, and emailed Ms. Roe a request to initiate a formal Title IX investigation on February 6, 2023.  (*Id.* ¶¶ 144, 153.)  On February 10, 2023, Ms. Roe elected to proceed with the formal investigation.  (*Id.* ¶ 154.)

Mr. Doe denied Ms. Roe's allegations throughout the Title IX investigation, including by noting that there were two eyewitnesses present in the room on the morning of September 2, 2022, who could corroborate his account that the sexual intercourse was consensual, as well as by pointing out the many inconsistencies in Ms. Roe's evolving narrative.  But a series of escalating constitutional, statutory, and procedural violations by Defendants prevented Mr. Doe from presenting a meaningful defense during the Title IX hearing.  Initially, Ms. Grove and Ms. Kern put the burden on Mr. Doe to prove his innocence and do the work of gathering evidence in his defense, in direct contravention of Penn State's Title IX policy.  (*See id.* ¶¶ 178–185.)  Additionally, despite having unfettered discretion to do so, Ms. Grove and Ms. Kern refused to briefly continue the Title IX hearing date to accommodate a material eyewitness, even though they knew more than a month in advance that the eyewitness was unavailable on the hearing date due to a military commitment.  (*See id.* ¶¶ 66, 198–233.)  What is more, they failed to even inform the eyewitness that, while the Title IX Office would not change the hearing date, he had the option to testify remotely.  (*See id.* ¶¶ 216–218.)  And most egregiously, Ms.

Kern and Ms. Grove both misled the Title IX Hearing Panel to believe that the eyewitness was nonresponsive and unwilling to participate in the investigation or to testify at the hearing—even though Ms. Grove had conducted an interview with the eyewitness herself and received a statement from him exonerating Mr. Doe just two weeks prior to the hearing. (*See id.* ¶¶ 236, 257–275.)

As a direct result of Defendants' misconduct, the Title IX Hearing Panel was deprived of material, exculpatory information corroborating Mr. Doe's testimony, and the Panel found in Ms. Roe's favor as to her allegations of nonconsensual sexual intercourse on the morning of September 2, 2022.[1] (*See id.* ¶¶ 278–283.) Mr. Doe was suspended indefinitely from the University effective the date of the Hearing Panel's decision (July 25, 2023) and is now starting the difficult process of attempting to rebuild his life and engage in academic and professional pursuits with the black mark of a suspension and permanent notation of discipline on his transcript. (*See id.* ¶¶ 284, 318–324.)

Through this lawsuit, Mr. Doe seeks to clear his name and his academic record and to hold Penn State, Ms. Grove, and Ms. Kern accountable for their actions. Through this Motion, Mr. Doe seeks to avoid sustaining additional reputational injury as he seeks to vindicate the wrongs already done to him.

---

[1] Notably, the Panel did not credit Ms. Roe with respect to her allegation of nonconsensual sexual intercourse on the evening of September 1, 2022, and Mr. Doe was found not responsible of those allegations. (*See id.* ¶ 280.)

# **ARGUMENT**

While Federal Rule of Civil Procedure 10(a) ordinarily requires complaints to "name all the parties," FED. R. CIV. P. 10(a), federal courts have long recognized an exception to that requirement for cases implicating sensitive reputational and privacy interests. *See Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir. 2008)). In *Megless*, the Third Circuit Court of Appeals held that a plaintiff may proceed pseudonymously if they sufficiently allege that they have "a reasonable fear of severe harm from litigating without a pseudonym," and it developed a balancing test for assessing whether the plaintiff's "interest and fear" outweigh "the public's strong interest in an open litigation process." *Id.* at 408–410 (endorsing balancing test developed in *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997)).

*Megless* tasks courts to consider two tranches of factors: a set favoring pseudonymous pleading, and a set which ordinarily will weigh against it. In the first tranche, the court identified the following six factors:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at

the price of being publicly identified; and (6) whether the
party seeking to sue pseudonymously has illegitimate
ulterior motives.

*Id.* at 409 (quoting *Provident Life*, 176 F.R.D. at 467–468).  In the second tranche,

the court identified three additional factors which will ordinarily weigh against

pseudonymous pleading:

(1) the universal level of public interest in access to the
identities of litigants; (2) whether, because of the subject
matter of this litigation, the status of the litigant as a public
figure, or otherwise, there is a particularly strong interest
in knowing the litigant's identities, beyond the public's
interest which is normally obtained; and (3) whether the
opposition to pseudonym by counsel, the public, or the
press is illegitimately motivated."

*Id.* (quoting *Provident Life*, 176 F.R.D. at 467–468).  As this Court has helpfully

explained, the *Megless* factors can be distilled to essentially two questions: "Does

the Plaintiff risk severe harm by proceeding under his or her real name?  And, if so,

is this risk outweighed by a particularly strong public interest in knowing the

Plaintiff's identity?"  *Doe v. Pa. Dep't of Corr.*, No. 4:19-CV-01584, 2019 WL

5683437, at *2 (M.D. Pa. Nov. 1, 2019) (Brann, J.).

### A.   Mr. Doe risks severe reputational, social, and other harm if required to proceed under his real name in this lawsuit.

Mr. Doe fears severe reputational harm and social and professional impacts,

as well as for his personal safety, should he be denied the opportunity to pursue this

action by pseudonym. (Ex. A, Doe Decl. ¶¶ 8–14.)[2]  Indeed, Mr. Doe has already been denied admission to his first-choice universities as a result of his suspension and the disciplinary notation on his transcript, and he is concerned, given the ubiquity of the Internet and public access to the courts, that he will not be able to find a job and that his professional life will permanently suffer if he is required to disclose his identity in this case. (*Id.* ¶¶ 11–13.)  Mr. Doe also harbors concerns for his family's reputation and safety if his identity is publicly disclosed. (*Id.* ¶ 15.)

And there can be no doubt that Mr. Doe's fears are reasonable.  Federal courts, including this one, have recognized that student-plaintiffs found responsible for sexual misconduct in Title IX proceedings experience significant reputational repercussions since, "in addition to a tarnished disciplinary record," they face "the stigma of being labeled 'responsible' for engaging in nonconsensual sexual intercourse." *Doe v. Pa. State Univ.*, 336 F. Supp. 3d 441, 448 & n.61 (M.D. Pa. 2018) (Brann, J.) (collecting cases from various courts of appeals and district courts describing the reputational harms to student-plaintiffs as, *inter alia*, "substantial," "compelling," and "profound"); *see also Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016) (noting student-plaintiffs in litigation arising out of Title

---

[2] A true and correct copy of the Declaration of Plaintiff John Doe is attached hereto as **Exhibit A**.

IX proceedings "face substantial social and personal repercussions," including "stigmatization as a sex offender").

As one court has put it, forcing a Title IX student-plaintiff to proceed under his true name in a lawsuit would all but "guarantee a permanent label as a sexual offender, discoverable with a simple Google search; that is arguably worse than the reputational harm he complains of from the University's currently confidential disciplinary proceedings." *Doe v. Univ. of St. Thomas*, No. 16-CV-1127-ADM-KMM, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016); *see also Doe v. Trs. of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *5 (D.N.H. May 2, 2018) (noting these reputational concerns are "only exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to Dartmouth's finding and sanction forever, whether or not he is successful in this litigation").  Mr. Doe fears precisely these consequences—and the further and lifelong trauma that would attend them.  (Doe Decl. ¶¶ 8–15.)  Accordingly, Mr. Doe has established that he has a reasonable fear of severe harm from being denied pseudonymity, satisfying the first part of the *Megless* framework.

**B.    The risk of severe harm to Mr. Doe is not outweighed by a particularly strong public interest in knowing Mr. Doe's identity.**

This case implicates every single one of the *Megless* factors favoring pseudonymous pleading.  Initially, federal law mandates that Penn State maintain

Title IX and academic records confidentially, *see* 20 U.S.C. § 1232g(b); 34 C.F.R. § 106.71(a), as does Penn State's own Title IX policy, *see* Doc. 1-4, PA. STATE UNIV., AD85 TITLE IX SEXUAL HARASSMENT § VIII (last revised Jan. 4, 2022). As the First Circuit has put it, "courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 76 (1st Cir. 2022). Mr. Doe has respected and maintained the confidentiality of the Title IX process and has not revealed the allegations against him outside of that process except to those with a need to know— his family and closest friends who have provided financial and emotional support; his attorneys and their staff; and, because the permanent notation on his Penn State transcript has left him no choice, the admissions staff at the colleges to which he has applied. (Doe Decl. ¶¶ 5–7.) And Mr. Doe's reasons for wanting to maintain that confidentiality have been recognized as substantial by this Court and others. *See, e.g.*, *Pa. State Univ.*, 336 F. Supp. 3d at 448 & n.61; *Brandeis Univ.*, 177 F. Supp. 3d at 602; *Univ. of St. Thomas*, 2016 WL 9307609, at *2. Being forced to reveal his identity through this lawsuit may very well subject him to severe and lifelong reputational harm, regardless of the outcome of this action, and thus "defeat the very purpose of this litigation." *Doe v. Princeton Univ.*, No. 22-5887 (RK)(DEA), 2023 WL 8171644, at *3 (D.N.J. May 26, 2023) (quoting *Trs. of Dartmouth Coll.*, 2018 WL 2048385, at *6).

The public interest in allowing Mr. Doe to maintain his confidentiality is also significant. As this Court's sister court has recognized, "there is a public interest in maintaining the confidentiality of the parties" in "private, sensitive" matters of this nature. *Doe v. Trs. of Univ. of Pa.*, No. 16-5088, Doc. 12 at 1–2 n.1 (E.D. Pa. Sept. 26, 2016).[3] And if pseudonymity is denied, "other similarly situated litigants [may] be deterred" from litigating their claims for fear of further reputational harm, *see Megless*, 654 F.3d at 410, allowing constitutional violations by universities to continue unchecked, knowing respondents would likely prefer to leave bad enough alone within the confidential Title IX process rather than risk revealing the false allegations against them to the world. *See Princeton Univ.*, 2023 WL 8171644, at *3 (noting "there is authority for the proposition that precluding pseudonymous litigation in college disciplinary cases may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process" (quoting *Trs. of Dartmouth Coll.*, 2018 WL 2048385, at *6 (citing *Doe v. Colgate Univ.*, No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016)))); *see also D.M. v. County of Berks*, 929 F. Supp. 2d 390, 402 (E.D. Pa. 2013) (finding that denying request to proceed pseudonymously likely would deter those falsely accused of child sexual abuse from asserting their rights). Indeed, Mr. Doe has not yet determined

---

[3] In accordance with Local Rule of Court 7.8(a), a true and correct copy of this unpublished order is attached hereto as **Exhibit B**.

whether he will proceed with this lawsuit if his Motion is denied, for these very reasons.  (Doe Decl. ¶ 16.)

Conversely, there is little, if any, public interest in knowing Mr. Doe's particular identity.  Mr. Doe is not a public figure, and while the public "certainly has an interest in the *issues*" raised in the Complaint, allowing Mr. Doe to proceed by pseudonym will in no way "impede the public's ability to follow the proceedings" or to fully appreciate and understand those issues.  *See Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001).  Mr. Doe is not seeking to seal the entire case or even portions of it; he seeks only to prevent disclosure of his name or address in court filings, which will otherwise be fully accessible to the public.  *See Pa. Dep't of Corr.*, 2019 WL 5683437, at *3.  Moreover, Mr. Doe has no "illegitimate ulterior motives" in seeking to sue pseudonymously.  *Per contra*, the only collateral effects of allowing Mr. Doe to proceed by pseudonym are positive ones—pseudonymous pleading will protect not only the reputational and privacy interests of Mr. Doe, but also of those identified as witnesses in the Complaint, and even of Ms. Roe, to the extent friends or family might affiliate this Complaint with her through the use of Mr. Doe's true name.[4]

---

[4] To protect their identities, Mr. Doe uses pseudonyms in his Complaint to refer to Ms. Roe as well as to the eyewitnesses to the alleged misconduct.

Finally, none of the countervailing *Megless* factors outweigh Mr. Doe's reasonable fear of proceeding in name in this lawsuit. Of those three factors—the universal level of interest in knowing litigants' identities, whether there is a particularly strong interest in knowing Mr. Doe's identity, and whether any opposition to Mr. Doe's request is illegitimately motivated, *see Megless*, 654 F.3d at 409—the only one arguably weighing against use of a pseudonym is the first. This general interest, however, "exists in all civil actions," and cannot alone support denying pseudonymity when the other factors "all tip in favor of plaintiff's use of a pseudonym"—particularly when all other facts, save for Mr. Doe's name and address, will be publicly available. *Provident Life*, 176 F.R.D. at 469.

As for the remaining factors, Mr. Doe has established above that the public has no particularly strong interest in knowing his identity. And while it is not yet known on what grounds, if any, Defendants might oppose the instant Motion, Mr. Doe cannot conceive of legitimately motivated bases to contest his request. Mr. Doe has established genuine and compelling reasons for wishing to remain anonymous, and Penn State consistently has declined to challenge pseudonymous pleading by similarly situated student-plaintiffs. *See Doe v. Pa. State Univ.*, No. 4:18-CV-2350-MWB (M.D. Pa.) (no apparent opposition by Penn State to Title IX respondent's motion for leave to proceed by pseudonym); *Doe v. Pa. State Univ.*, No. 4:18-CV-00164-MWB (M.D. Pa.) (same); *Doe v. Pa. State Univ.*, No. 17-CV-01315-MWB

13

(M.D. Pa.) (same); *see also Doe v. Pa. State Univ.*, No. 4:19-CV-01438-MWB, Doc. 44 (M.D. Pa. Nov. 22, 2019) (taking no position as to whether plaintiff should be permitted to proceed by pseudonym but submitting opposition brief to address certain factual disputes). Penn State is fully aware of the actual identity of Mr. Doe and will not be prejudiced in any way by his use of a pseudonym in public filings.

At bottom, Mr. Doe simply wishes to clear his name without having it sullied further by virtue of being publicly associated with Ms. Roe's false accusations. (Doe Decl. ¶ 4.) As this Court and countless others have recognized, under such circumstances, the student-plaintiff's "reasonable fear of severe harm outweighs the public's interest in open judicial proceedings," and the *Megless* factors "favor anonymity." *Pa. State Univ.*, No. 17-CV-01315, Doc. 6 at 1;[5] *see also, e.g.*, *Trs. of Dartmouth Coll.*, 2018 WL 2048385, at *7; *Doe v. Purdue Univ.*, 321 F.R.D. 339, 342 (N.D. Ind. 2017); *Trs. of Univ. of Pa.*, No. 16-5088, Doc. 12 at 1–2 n.1; *Univ. of St. Thomas*, 2016 WL 9307609, at *4; *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592–594 (E.D. Va. 2016); *Colgate Univ.*, 2016 WL 1448829, at *4.

---

[5] In accordance with Local Rule of Court 7.8(a), a true and correct copy of this unpublished order is attached hereto as **Exhibit C**.

14

## **CONCLUSION**

For all of these reasons, the *Megless* factors support allowing Mr. Doe to proceed by pseudonym, to guard against stigmatization and the further reputational damage that inevitably would result from unnecessarily disclosing his identity. Mr. Doe therefore respectfully requests that this Court grant his Motion for Leave to Proceed by Pseudonym and allow him to proceed under the pseudonym "John Doe" in this litigation.

Dated:   December 9, 2024                   Respectfully submitted,

                                                          BABST CALLAND, CLEMENTS & ZOMNIR P.C.

                                                          */s/ Casey Alan Coyle*
                                                          Casey Alan Coyle, Esquire
                                                          PA ID No. 307712
                                                          Stefanie Pitcavage Mekilo, Esquire
                                                          PA ID No. 312720
                                                          409 N. 2nd Street, Suite 201
                                                          Harrisburg, PA 17101
                                                          (267) 939-5832
                                                          ccoyle@babstcalland.com
                                                          smekilo@babstcalland.com
                                                          *Counsel for Plaintiff John Doe*